UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Keystone Retaining Wall Systems, Inc.,

Plaintiff,

v.

Civ. No. 00-496 (RHK/SRN)
**MEMORANDUM OPINION AND ORDER**

Rockwood Retaining Wall, Inc., and GLS Industries, Inc., a/k/a Great Lakes Silo,

Defendants.

---

## Introduction

Before the Court are three motions in limine by Plaintiff Keystone Retaining Wall Systems, Inc. ("Keystone):

1. to preclude untimely defenses involving patent invalidity and notice of infringement;

2. to exclude evidence of subsequent patents; and

3. to exclude the testimony of defense experts McDonald and Westman

Also before the Court are four motions in limine by Defendants Rockwood Retaining Wall, Inc. and GLS Industries, Inc. (hereinafter, "Rockwood"):

1. to exclude evidence of Keystone's blocks and of comparisons to Rockwood blocks;

2. to exclude testimony of "party" expert witnesses;



OCT 0 9 2001
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

3. to exclude the expert report and testimony of infringement expert Damon B. Farber; and

4. to exclude the expert testimony of David Fronek.

The Court addresses each set of motions in turn, beginning with Keystone's.

## I. KEYSTONE'S MOTIONS IN LIMINE

### A. Precluding Untimely Defenses

Keystone moves for an order preventing Rockwood from asserting (1) theories regarding the invalidity of the '560 patent which Rockwood first identified after the dispositive motion deadline in the case and after briefing and oral argument had been completed on the parties' cross-motions for summary judgment, and (2) an "affirmative defense" regarding the date on which any damages for infringement would begin to accrue. Keystone contends that it has been seriously prejudiced by Rockwood's delay in disclosing these defenses and that the delay was unjustified.

#### 1. Invalidity

Together with the answer to Keystone's Second Amended Complaint, Rockwood asserted a two-count counterclaim, Count I of which sought a judgment declaring the '560 patent to be invalid, unenforceable and not infringed. (See Doc. No. 24.) With respect to the patent's invalidity, Count I of the Counterclaim incorporated by reference two paragraphs from the affirmative defenses asserted in the Answer. (Answer and Countercl. to Second Amended Compl. ¶ 23.) Those paragraphs read as follows:

> 17. Upon information and belief the '560 Patent, as originally granted and as reexamined, is invalid and unenforceable for failure to comply with one or more provisions of Title 35 U.S.C., particularly including but not limited to § 102.
>
> 18. Upon information and belief, the '560 Patent is invalid and unenforceable under § 103 of Title 35 of the United States Code for the reason that the differences between the subject matter of the claim of said patent and the prior art at the time the alleged invention thereof was made were such that the subject matter as a whole would have been obvious at the time the alleged invention was made to a person having ordinary skill in the art to which said subject matter pertains.

(Answer and Countercl. to Second Amended Compl. ¶¶ 17-18.) The above-quoted paragraphs are found in the earlier Answer and Counterclaim Rockwood filed with the Court. (See Doc. No. 5.)

Keystone propounded a contention interrogatory, Interrogatory No. 5, regarding Rockwood's claim that the '560 patent was invalid. Rockwood responded as follows:

> It is Defendant's position that the '560 Patent is invalid under 35 U.S.C. § 103. The particular prior art references upon which Defendant will rely in support of that contention are still under investigation and consideration.
>
> Defendant has also not as yet fully developed and considered all of the prior art which could support a basis for a contention of invalidity under 35 U.S.C. § 102.
>
> Upon information and belief, the '560 Patent is also invalid for failure to name the proper inventor(s) thereon. Michael E. Woolford, identified in the Answer to Interrogatory No. 1, is believed to have played a major role in the conception and reduction to practice of the design for a three-faceted broken front face for a retaining wall block which is the subject of the '560 Patent. Dick J. Sievert (deceased) is also believed to have been at least a co-inventor with respect to the three faceted, split front face design for a block of the '560 Patent. Upon information and belief, Woolford and Sievert conceived and

> developed the aforesaid design of the '560 Patent when developing a block of that type as employees of a predecessor company of Anchor Wall Systems, Inc., on a project for Keystone.

(Aff. of Seth J. Sergent-Leventhal Supp. Mot. in Limine to Preclude Defs.' Untimely Defenses, Ex. 1 at 5 (Defs.' Answers to Pl.'s First Set of Interrogs.).)[1]

Keystone later propounded another interrogatory aimed at discovering what Rockwood believed to be the relevant prior art for the '560 patent, asking Rockwood to "identify any retaining wall block designs, not identified in the '560 file history, made or sold by Rockwood or others that you believe to be prior art as to the Keystone '560

---

[1] In the same set of interrogatories, Rockwood responded to Interrogatory No. 6, which asked for all facts supporting Rockwood's claim that the '560 patent is <u>unenforceable</u>:

> The facts which support the unenforceability of the '560 Patent also include the facts as set forth above in response to Interrogatory No. 5 with respect to the invalidity of that patent.
>
> The '560 Patent is also believed to be unenforceable because of inequitable conduct before the PTO in misrepresenting the true inventorship on that patent, with resulting "unclean hands." Paul Forsberg and a person believed to be John Connor visited Messrs. Mike Woolford and Dick Sievert at a predecessor company of Anchor Wall Systems, Inc. in the time period 1986-1987 in connection with a block development project for Keystone. That project resulted in the conception and development of the three-faceted, split front face for a retaining wall block of the '560 Patent by Messrs. Woolford and Sievert. In not naming Messrs. Woolford and Sievert as at least co-inventors on the application for the '560 Patent, Paul Forsberg individually, and Keystone as a business entity, knowingly misrepresented to the PTO the true inventorship with respect to the design submitted in the application which resulted in the '560 Patent.

(<u>Id.</u> at 6.)

patent." (Aff. of Seth J. Sergent-Leventhal Supp. Mot. in Limine to Preclude Defs.' Untimely Defenses, Ex. 2 at 5 (Defs.' Answers to Pl.'s Second Set of Interrogs.).) In response, Rockwood identified four blocks. (Id.)

Keystone moved for partial summary judgment on Rockwood's counterclaim on June 25, 2001. In its brief, Keystone characterized Rockwood's invalidity claim as centering on a single issue – whether the inventors were properly named on the '560 patent.[2] (Pl.'s Mem. Supp. Mot. for Partial Summ. J. at 2, 8-10.) Keystone further argued that Rockwood's inequitable conduct claim was "built on the same allegations as their invalidity claim" – namely the failure to name co-inventors. (Id. at 6, 10-11.) Rockwood, in the memorandum opposing summary judgment, never asserted that grounds other than the incorrect identification of inventors existed which would warrant invalidating the patent and, thus, would make Keystone's motion to dismiss the invalidity claim inappropriate. (Defs.' Mem. Opp'n Pl.'s Mot. for Partial Summ. J. at 4-6, 8-10.)

Keystone's partial summary judgment motion was heard on July 30, 2001. On August 3, 2001, while Keystone's motion was under advisement, Rockwood supplemented the response to Interrogatory No. 5, adding that "the '560 Patent may also be invalid because of an on-sale bar under 35 U.S.C. § 102(b), as the '560 patent may have improperly claimed prior to U.S. Design Patent No. 298,463." (Aff. of Seth J.

[2] In a footnote, Keystone argued that "[a]lthough Defendants raised the possibility of asserting additional invalidity defenses under Sections 102 and 103, it is too late now." (Pl.'s Mem. Supp. Mot. for Partial Summ. J. at 3, n.2.)

Sergent-Leventhal Supp. Mot. in Limine to Preclude Defs.' Untimely Defenses, Ex. 3 final page (Defs.' Supplemental Answers to Pl.'s Interrog. Nos. 1 and 5).) Rockwood further supplemented the response by stating that "on information and belief, [Rockwood's] Supreme block represents invalidating prior art to the '560 Patent." (Id.) This information was not brought to the Court's attention while the summary judgment motion was pending. On August 22, 2001, the Court granted Keystone's motion for summary judgment, dismissing Rockwood's Counterclaim in its entirety. The analysis portion of the Memorandum Opinion addressed the only issue presented by the parties' memoranda -- whether Rockwood had presented a genuine issue of material fact regarding Keystone's alleged failure to identify co-inventors.

Citing the Order dismissing the Counterclaim in its entirety, Keystone claims that the issue of the '560 patent's validity is no longer in the case. The Court agrees. The time for Rockwood to have presented evidence giving rise to a genuine issue of material fact as to the '560 patent's validity was in opposition to Keystone's motion to dismiss that claim. At no time up to and including the present, has Rockwood clearly articulated the basis for their claim that the design disclosed in '560 patent is obvious over the prior art.[3] Although Rockwood supplemented their responses to Keystone's contention interrogatory on invalidity, there was no supplement to that part of the original answer stating that

[3] Rockwood acknowledges that, based on the Court's claim construction, it no longer has a viable argument that the '560 patent is invalid under 35 U.S.C. § 102 due to anticipation. (Defs.' Mem. Opp'n Mot. in Limine to Preclude Untimely Defenses at 3.)

"[t]he particular prior art references upon which Defendant will rely" in support of the claim that the '560 patent is invalid as obvious under § 103 "are still under investigation and consideration." The Court will grant Keystone's motion with respect to any testimony or evidence relating to the '560 patent's validity.

**2. Lack of Notice**

Keystone also seeks to exclude what it characterizes as an untimely defense that Rockwood is asserting under 35 U.S.C. § 287. Rockwood apparently contends that Keystone did not mark its products as required by § 287; therefore, damages for infringement -- if any -- should not begin to accrue until Keystone filed suit in March 2000. Keystone characterizes this argument as an "affirmative defense," and claims that Rockwood has asserted it too late. Keystone complains that, although it posed an interrogatory to Rockwood asking for all possible defenses to infringement, Rockwood never raised Keystone's failure to mark its products or give timely notice of infringement. Keystone also argues that it understood the parties to have agreed that the damages period began on September 8, 1997. That understanding is apparently based on a statement in Rockwood's expert report indicating that defense counsel had advised the expert that "the relevant infringement period is from September 8, 1997, to the present."

Rockwood responds that the question of whether sufficient notice of infringement was given is an element of Keystone's case in chief, not an affirmative defense. The Court agrees. Section 287(a) of the Patent Act provides:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them . . . may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent, or when, from the character of the article, this cannot be done, by fixing to it, or to the package wherein one or more of them is contained, a label containing a like notice. In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a). Thus, to collect damages for infringement,

> a patentee or owner of the exclusive rights granted by a U.S. patent must first give proper notice of the patent rights to any alleged infringer. In other words, damages are available only from a point in time at which an alleged infringer is on notice of the patent and of the allegedly infringing activity. . . . The notice may be actual or constructive, and <u>the burden of pleading and proving notice lies with the patentee or owner of the patent</u>. . . . Failing a showing of actual or constructive notice prior to instituting suit, filing a complaint creates actual notice.

<u>Cybiotronics, Ltd. v. Golden Source Electronics Ltd.</u>, 130 F. Supp. 2d 1152, 1159-60 (C.D. Cal. 2001) (internal citations omitted and emphasis added). Thus, Keystone has the burden of proving that it provided Rockwood with notice of the patent and its allegedly infringing conduct. Absent evidence of actual or constructive notice, the filing of this action will be the date of notice. On the issue of notice of infringement, Keystone's motion in limine will be denied.

**B. Excluding Evidence of Subsequent Patents**

Keystone argues that evidence of patents that issued after the '560 patent is

irrelevant to the infringement issues presented by this case. To the extent these subsequent patents purport to cover some of the accused products manufactured and sold by Rockwood, that evidence is irrelevant to an infringement inquiry. Keystone also argues that the admission of evidence regarding such patents would potentially confuse and mislead the jury. Accordingly, Keystone moves to exclude evidence of the patents pursuant to Rules 402 and 403.

Rockwood argues that subsequently-issued patents are relevant to an evaluation of the "substantial similarity" between the design disclosed in the '560 patent and the accused Rockwood blocks. Rockwood bases this argument on the holdings of Federal Circuit cases addressing infringement under the "doctrine of equivalents." Under that doctrine, a key inquiry is whether the differences between the accused device and the claimed device are "insubstantial." A principal case cited by Rockwood holds that, where the accused device has been patented after and in light of the patent-in suit, there is a presumption that the accused device is non-obvious and, thus, that there are substantial differences between the accused device and the patent-in-suit. See Zygo Corp. v. Wyko Corp., 79 F.3d 1563,1570 (Fed. Cir. 1996). Hence, the fact that the accused device has been separately patented is relevant to the question of whether the differences between the claimed device and the accused device are insubstantial.

The analogy Rockwood attempts to draw between these holdings in the "doctrine of equivalents" cases and the substantial similarity test under Gorham Co. v. White, 81

U.S. (14 Wall.) 511, 528 (1871), is ultimately too tenuous. Rockwood has not shown that any of the accused Rockwood blocks are covered by any of the subsequently-issued patents Rockwood seeks to introduce into evidence. Nor has Rockwood established that any of the subsequently-issued patents bear any relationship to the accused Rockwood blocks. Rockwood has not established that the subsequently-issued patents are relevant to the question of whether the accused Rockwood blocks are "substantially similar" to the design disclosed in the '560 patent.

The other issues Rockwood identifies as providing relevancy for the subsequently-issued patents – willfulness and the specific intent to induce infringement – similarly do not work. Several factors can support a finding of willful infringement, including "whether the infringer, when it knew of the other's patent protection, investigated the scope of the patent and formed a good-faith belief that the patent was invalid or that it was not infringed." Century Wrecker Corp. v. E.R. Buske Mfg. Co., Inc., 913 F. Supp. 1256, 1272 (N.D. Iowa 1996) (citing Read Corp. v. Portec, Inc., 970 F.2d 816, 826-28 (Fed. Cir. 1992)). Rockwood does not, however, articulate any theory under which the subsequently-issued patents would tend to make it more or less likely that Rockwood believed in good faith that Keystone's '560 patent was invalid or that the accused Rockwood blocks did not infringe the '560 patent. As for the issue of inducement to infringe, Rockwood has again failed to articulate why its awareness of subsequently-issued patents would have a bearing on its belief that the accused blocks Rockwood had

licensed for manufacture and sale did not infringe. The Court concludes that the subsequently-issued patents are not relevant, and will grant Keystone's Motion in Limine.

### C. Excluding Testimony of Expert Witnesses McDonald and Westman

Keystone moves the Court, pursuant to Rule 702 of the Federal Rules of Evidence, to exclude (1) all testimony from Rockwood's expert witness Nicholas Westman and (b) all testimony related to the damages calculations of Rockwood's expert, Douglas M. McDonald. Keystone claims that Westman's testimony is inadmissible because it addresses issues that have already been decided, issues of law that are the province of the Court, and issues that are outside the scope of his expertise. As for McDonald, Keystone argues that his proposed testimony is "premised on an expert opinion in an area where he has no expertise," and is unreliable because it is based on an unsound methodology.

At the time this action was commenced, Rule 702 of the Federal Rules of Evidence provided that "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702 (2000). Effective December 1, 2000, Rule 702 was amended to add language consistent with a line of Supreme Court cases regarding expert testimony that began with <u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>, 509 U.S. 579 (1993). As amended, Rule 702 provides that

> . . . a witness qualified as an expert by knowledge, skill, experience, training

> or education may testify thereto in the form of an opinion or otherwise, **if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts.**

Fed. R. Evid. 702 (2001) (emphasis added).

Under Daubert, the trial judge is charged with a "gatekeeping function" to exclude unreliable expert testimony. This "gatekeeper function" applies with respect to all expert testimony, not just scientific testimony. Kumho Tire v. Carmichael, 526 U.S. 137 (1999). Under the Daubert line of cases and amended Rule 702, the district court ensures the relevance of the proposed expert testimony by evaluating whether the opinions offered are sufficiently tied to the facts of the case, see Daubert, 509 U.S. at 591, and the reliability of the testimony by considering a number of nonexclusive factors, including "(1) whether the theory or technique can be (and has been) tested, (2) whether the theory has been subjected to peer review and publication, (3) the known or potential rate of error, and (4) whether the theory has been generally accepted." Peitzmeier v. Hennessy Indus., Inc., 97 F.3d 293, 297 (8th Cir.1996) (quoting Daubert, 509 U.S. at 594). The district court may also evaluate whether the expert witness has made an unjustifiable analytical leap from an accepted premise to the witness's conclusion. See General Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997) (observing that a trial judge "may conclude that there is simply too great an analytical gap between the data and the opinion proffered"). Using these principles, the Court considers each expert's testimony in turn.

**1. Westman**

Keystone argues that Westman should not be allowed to opine as to whether Rockwood's Classic, Legend, Cottage Stone and Country Stone blocks infringe the '560 patent because he is not qualified in the relevant field of art. Westman is a practicing patent attorney and has been for several years. Keystone complains that Westman's curriculum vitae identifies no particular area of technical expertise, let alone expertise in the area of retaining wall block design. Therefore, Keystone contends, Westman is not one skilled in the relevant art.[4]

Rockwood responds that what constitutes "one of ordinary skill in the art" is a question of fact that depends, in part, on the complexity of the subject matter involved. Rockwood argues that "[h]ere, we are dealing with the ornamental front facing of retaining wall blocks, which is not a technical or complex subject matter." (Defs.' Reply Brief at 2.) The Court agrees with Rockwood's characterization of the subject matter of the patent-in-suit and is frankly at a loss to understand why, in the words of Federal Rule of Evidence 702, "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue" – namely, infringement.

---

[4] Keystone also argues that Westman is not qualified to testify as to what statements in the file history mean to those skilled in the art, or how the '560 patent should be construed in light of those file history statements. Nor, Keystone argues, should Westman be permitted to testify about what -- in light of the prior art -- constitutes the points of novelty for the '560 patent. Keystone correctly points out that construction of the '560 patent is an issue for the Court and was decided in the August 22, 2001 Memorandum Opinion and Order.

The Court concludes, as Rockwood contends, that "a panel of jurors constitutes a sampling of ordinary observers (i.e., one of ordinary skill in the art)." (Defs.' Reply Brief at 2.) Westman is simply another ordinary observer who would tell the jury whether he thinks the accused Rockwood blocks infringe the patent.[5] Westman cannot opine regarding infringement.

Keystone further argues that Westman should not be permitted to testify concerning the patentability of the design of the '560 patent in view of the prior art because the issue of the patent's validity has been wholly disposed of by the Court in its August 22, 2001 Memorandum Opinion and Order. For the reasons set forth, supra, in section I.A.1., the Court agrees. Rockwood seeks to draw a distinction between the validity of the '560 patent and the patentability of the design disclosed in the '560 patent. Rockwood argues that statements made by the patentee during the prosecution of the patent "are used both as a basis for patentability of the design and are relevant to the '560 patent claim scope." (Defs.' Reply Brief at 4.) Rockwood appears to be drawing a distinction without a difference.

The requisites for patentability are set forth and defined in 35 U.S.C. §§ 101-103.

---

[5] Keystone also objects to Westman's proposed testimony, as set out in his report, to the extent he purports to opine regarding what the law of patents is and how it applies to the facts of this case. Keystone argues that any such testimony must be excluded because it invades the province of the Court to instruct the jury on the applicable law. Rockwood acknowledges that the Court bears the responsibility for instructing the jury as to the law and state that Westman would not opine to the jury about what the law of patents is.

As discussed above, Rockwood pleaded but failed to come forward with sufficient evidence to support a conclusion that the '560 patent was invalid because it failed to comply with one or more of the requirements of 35 U.S.C. § 102 and because the disclosed design was obvious over the prior art, contrary to 35 U.S.C. § 103. The Court concludes that Rockwood will not be permitted to present evidence regarding "patentability" through Westman. With respect to Westman, Keystone's motion will be granted.

**2. McDonald**

Keystone has elected to seek damages for Rockwood's alleged infringement in the form of a reasonable royalty, pursuant to 35 U.S.C. § 284. Keystone seeks to exclude testimony from Rockwood's damages expert, McDonald, regarding the proper method for calculating the "reasonable royalty" Keystone may recover. McDonald has looked to Keystone's license agreements in an effort to calculate the royalty Keystone in fact collects from its licensees in connection with the '560 patent. The language on which McDonald relies indicates that Keystone collects a per unit license fee which is allocated on a one-third/ one-third/ one-third basis among the "use of the Know-How," the "use of the Patent Rights (allocated equally among any issued patents)", and the "use of the Trademarks." With respect to the one-third allocated to the "use of the Patent Rights," McDonald looked to Keystone promotion materials, the licenses themselves, and information from Rockwood's counsel to identify the number of patents associated with

Keystone's products. He determined that number to be fifteen with respect to certain models of Keystone block and between one and four with respect to other models.

Keystone levels a number of criticisms at McDonald's analysis. For example, Keystone points out that, under certain license agreements, the per unit license fee is divided equally among four or five categories of property rights, one of which is patent rights. Keystone also challenges McDonald's determination as to the number of patents attributable to its products. The Court has carefully considered Keystone's arguments and cannot conclude as a matter of law that a "reasonable royalty" damages analysis based upon Keystone's own license agreements is so inherently unreliable or irrelevant as to be excluded under the standard in Daubert and Federal Rule of Evidence 702.[6] Keystone's arguments are, of course, appropriate areas for vigorous cross-examination. As for the proposed testimony of McDonald aimed at rebutting the methodology used by Plaintiff's expert, the Court concludes that such testimony will be allowed. Plaintiff's

---

[6] Keystone also argues that "there is simply no basis in reality to conclude that all conferred rights . . . are of equal value based on this contractual convention" (Pl.'s Mem. Supp. Mot. in Limine at 15-16), because the licensees do not all value the "know-how," the trademark rights and the patented aspects of the licensed products equally. For example, Keystone contends, some licensees may choose not to exploit the trademark for marketing purposes; others may have all the "know-how" they need. The Court is mystified by this argument. Keystone, as the licensor, presumably places the values on its intellectual property rights that are found in the licensing agreements. The licensees have, by agreeing to the terms of the licensing agreement, agreed to those contractual values. It seems highly unlikely that Keystone would not sue a licensee for breach of the licensing agreement were that licensee to pay only two-thirds of its license fee because it was not using Keystone's trademark rights. The value to Plaintiff Keystone of those rights is defined in the contracts.

motion to exclude McDonald's expert testimony will be denied.

II. ROCKWOOD'S MOTIONS IN LIMINE

**A. Excluding Evidence of Keystone Blocks and of Comparisons to Rockwood Blocks**

Pursuant to Rule 403, Rockwood moves to exclude (1) any evidence at trial of Keystone's retaining wall blocks, and (2) testimony from William Dawson, the president of Keystone, regarding alleged confusion in the marketplace between Keystone's blocks and Rockwood's blocks.

**1. The Keystone Blocks**

Rockwood claims that having Keystone blocks in the courtroom and allowing a comparison of them with the Rockwood accused blocks would be highly prejudicial. Rockwood argues that the correct analysis for the infringement of a design patent is to compare the accused product to the patent, and that it is legal error to compare the accused product to products manufactured by the patentee which the patentee claims embody the design. The law is not quite as clear-cut, however, as Rockwood contends.

The Federal Circuit has repeatedly held that, where there is no significant distinction between the drawings of the design patent and a physical embodiment of that design created by the patentee, it is not error to allow a comparison of an embodiment of the patented design to the accused products. E.g., L.A. Gear, Inc., v. Thom McAn Shoe Co., 988 F.2d 1117, 1125 (Fed. Cir. 1993) ("When the patented design and the design of

the article sold by the patentee are substantially the same, it is not error to compare the patentee's and the accused articles directly"); Braun Inc., v. Dynamics Corp. of Am., 975 F.2d 815, 821 (Fed. Cir. 1992) ("Nothing in Gorham suggests that, in finding design patent infringement, a trier of fact may not as a matter of law rely exclusively or primarily on a visual comparison of the patented design, as well as the device that embodies the design, and the accused device's design.") (emphasis added); Lee v. Dayton-Hudson Corp., 838 F.2d 1186, 1189 (Fed. Cir. 1988). Rockwood contends that there are significant differences between the drawings of the '560 patent and Keystone's products, namely that Keystone's products do not have "close to equal planar front faces as the patent shows . . . [or] roughed edges where the side faces meet the sidewalls." (Defs.' Mem. Supp. Mot. in Limine at 3.) The Court has compared images of the Keystone products to figures from the '560 patent and concludes that Rockwood's proposed distinctions are not significant. The Keystone products are sufficiently similar to the design disclosed in the patent to permit introduction of those products into evidence. That part of Rockwood's motion in limine will be denied.

### 2. Testimony of William Dawson

Rockwood has presented excerpts from Dawson's deposition indicating that his knowledge of "confusion in the marketplace" arises in part from an incident in which his neighbors told him that a retaining wall in the area had failed and that they believed it was made from Keystone blocks. Dawson examined the wall and determined that it was made

of Rockwood blocks. The Court agrees with Rockwood that the first portion of that proposed testimony, regarding the neighbors' "confusion" over whose blocks were involved in the wall, is hearsay and inadmissible. The Court also recognizes Rockwood's concern that testimony about the failure of a Rockwood wall could have a prejudicial effect that outweighs any minimal probative value associated with the testimony regarding that incident. Dawson shall not testify about the failure of the wall in his neighborhood.

Rockwood also asserts that Dawson will testify about several occasions on which he personally saw retaining walls he thought to be Keystone walls; he had to crawl up and look from behind to tell that they were not. Anecdotal evidence about an individual's confusion is not relevant to the jury's task of determining whether the ornamental front faces of the accused blocks are sufficiently similar to the patented design in the eyes of an ordinary observer to cause confusion. Furthermore, as Rockwood points out, Dawson never stated whether the walls in question were made of blocks covered by the '560 patent.[7] Dawson shall not be permitted to testify regarding his personal confusion between Rockwood blocks seen in the field and Keystone blocks.

---

[7] Rockwood also argue that Dawson's testimony must be excluded because it is impermissibly premised on a comparison of the accused Rockwood blocks to actual Keystone products that allegedly embody the patented design. For the reasons set forth in the preceding subsection, that argument is not persuasive.

### B. Excluding Testimony of "Party" Expert Witnesses

In Keystone's June 29, 2001 expert disclosures, it identified three "party experts" who might draw on their knowledge and experience in the relevant industry and offer opinion testimony. These "party experts" are Paul Forsberg, Robert MacDonald, and William Dawson. Forsberg is the inventor of the '560 patent. MacDonald was with Keystone from its inception to the present. Dawson has been employed by Keystone for nearly a decade and, as noted above, is presently Keystone's president. On August 17, 2001, Keystone served Rockwood with supplemental Rule 26(a)(1) disclosures in which Keystone indicated that

> (1) MacDonald had information on infringement, inventorship, commercial success, confusion in the marketplace between Keystone and Rockwood products, and damages;
>
> (2) Forsberg had information on the invention, commercial success, infringement, and validity; and
>
> (3) Dawson had information concerning infringement, confusion in the marketplace, and damages.

Rockwood moves to exclude the testimony of Forsberg, MacDonald and Dawson as late-disclosed expert testimony. Rockwood complains that, after receiving Keystone's August 17 supplement to its Rule 26(a) disclosures, it sought, and was denied, an opportunity to re-depose these witnesses on the limited issue of infringement.

Forsberg no longer appears to be employed at Keystone; thus, it is not clear that he is in fact a "party" witness. Forsberg clearly is a fact witness with respect to certain

categories of information (such as the circumstances of the invention and commercial success). It is unclear what factual information Forsberg can provide concerning infringement or the patent's validity. Indeed, given the "ordinary observer" test for infringement and the unsophisticated nature of the design at issue, any opinion from Forsberg regarding whether the Rockwood blocks are substantially similar to the '560 patent is unnecessary under Rule 702. The same is true for witnesses MacDonald and Dawson. Accordingly, none of the three "party experts" may opine as to whether Rockwood blocks infringe the '560 patent.

Given Dawson and MacDonald's long connection with Keystone, it appears clear that they will have first-hand knowledge regarding such areas as the commercial success of the patented design, customer confusion, and damages. Keystone has argued that testimony about customer confusion must be excluded because "design patent infringement does not concern itself with the broad issue of consumer behavior in the marketplace." See Braun, Inc. v. Dynamics Corp. of Am., 975 F.2d 815, 820 (Fed. Cir. 1992). Thus, Rockwood contends, customer confusion is not relevant to whether the design patent has been infringed. The Federal Circuit has held, however, that, given the low threshold for relevancy, evidence of actual confusion by consumers as to whether the accused product was manufactured by the plaintiff did have a tendency to make the existence of a fact material to a design infringement claim more probable or less probable than it would be without the evidence. See OddzOn Prods. Inc. v. Just Toys, Inc., 122

F.3d 1396, 1407 (Fed. Cir. 1997). To the extent Dawson and MacDonald have first-hand knowledge regarding the proposed areas of testimony, they will be permitted to testify. Based on the record before the Court, it will grant in part Rockwood's motion in limine with respect to any opinion testimony regarding infringement or the patent's validity. In all other respects, the motion is denied.

### C. Excluding Testimony of Keystone's Expert, Damon Farber

Damon Farber is a landscape architect who has been active in that field for twenty-nine years. Farber submitted an expert report in this matter on June 28, 2001, stating his expert opinion regarding the points of novelty expressed in the '560 patent. Based on his review of the prior art (supplied to him by Keystone's counsel), Farber opined that the point of novelty distinguishing the Keystone patent from other blocks that had been developed earlier is "the obvious split-faced, three-planed motif which had not been designed and was not available prior to Keystone's introduction." (Chadwick Decl. Ex. 1.) Farber also opines that the Keystone and Rockwood blocks are visually indistinguishable from each other, and that the accused Rockwood blocks "appear to offer no significant visual departure or point of novelty beyond that" exhibited in the '560 patent. (Id.) Farber bases this opinion on his own review of samples of Rockwood and Keystone blocks, "bolstered by years of in-field sightings of the three-planed, split-faced blocks that are commonly specified by designers and used in landscape applications to retain earth and to accommodate changes of grade." (Id.)

Rockwood moves to exclude Farber's testimony under Rules 402, 403, 702, and 703. The standard for the admissibility of expert testimony is set forth above in section I.C. As the Court has indicated a number of times in this Order, the subject matter of the '560 patent is neither technical nor sophisticated. The patent covers the ornamental appearance of the front face of a retaining wall block. The test for infringement of a design patent is to be determined from the viewpoint of an ordinary observer, not an expert. Therefore, "expert" opinion from Farber as to whether the front face of the accused Rockwood blocks infringes the '560 patent will not be of assistance to the jurors in determining whether the Rockwood blocks are substantially similar to the design described in the '560 patent.

With respect to the identification of points of novelty, however, the Court concludes that Farber's testimony regarding the prior art and how the design disclosed in the '560 patent is distinct from the prior art might be of assistance to the jury. Accordingly, Farber will be permitted to offer his opinion regarding the points of novelty disclosed in the '560 patent. The Court will grant in part Rockwood's motion in limine to exclude any opinion testimony from Farber as to whether the accused Rockwood blocks infringe the '560 patent.

**D. Excluding Expert Testimony of David Fronek**

David Fronek is an attorney who prosecuted the '560 patent and, therefore, has knowledge regarding the preparation and processing of the original and re-examination

applications for the '560 patent. Rockwood has moved to exclude Fronek from testifying as an expert witness in the area of patent law regarding claim construction or any other matters involving patent prosecution. Keystone, in response, has indicated that it does not plan to offer Fronek's testimony as an "expert" regarding either claim construction or patent prosecution. Keystone states that it may call Fronek as a fact witness to testify about the prosecution of the '560 patent. As a fact witness with first-hand knowledge of those events, Fronek is competent to testify and will not be excluded.

Keystone also indicates that it may call Fronek to testify in rebuttal to assumptions made by Rockwood's expert, Robert McDonald, concerning the calculation of a reasonable royalty. (See, supra, section I.C.2.) Specifically, Fronek may testify concerning the appropriateness of McDonald's allocation of certain patents to certain types of Keystone blocks. As a rebuttal expert witness, Fronek may so testify. Accordingly, Rockwood's motion in limine is denied.

**Conclusion**

Based on the foregoing, and all of the files, records and proceedings herein, IT IS ORDERED THAT

1. Plaintiff's Motion in Limine to Preclude Defendants' Untimely Defenses (Doc. No. 64-1) is **GRANTED IN PART** with respect to defenses of invalidity and unenforceability and **DENIED** with respect to issue of the lack of notice of infringement.

2. Plaintiff's Motion in Limine to Exclude Evidence of Subsequent Patents

(Doc. No. 64-2) is **GRANTED.**

3. Plaintiff's Motion in Limine to Exclude the Testimony of Defense Experts McDonald and Westman (Doc. No. 64-3) is **DENIED** with respect to expert witness McDonald and **GRANTED** with respect to expert witness Westman.

4. Defendants' Motion in Limine to Exclude Evidence of Keystone's Blocks and Evidence of Comparisons to Rockwood Blocks from Trial (Doc. No. 89-1) is **GRANTED IN PART** with respect to testimony by William Dawson as set forth in the Court's Memorandum Opinion, and **DENIED** with respect to the evidence of Keystone's blocks.

5. Defendants' Motion in Limine to Exclude Testimony of "Party" Expert Witnesses (Doc. No. 89-2) is **GRANTED IN PART** with respect to opinions regarding infringement of the '560 patent by the accused Rockwood blocks and, in all other respects, **DENIED**.

6. Defendants' Motion in Limine to Exclude the Expert Report and Testimony of Plaintiff's Infringement Expert, Damon B. Farber (Doc. No. 89-3) is GRANTED IN PART with respect to opinions regarding infringement of the '560 patent by the accused Rockwood blocks and, in all other respects, **DENIED**.

7. Defendants' Motion in Limine to Exclude the Expert Testimony of David N. Fronek (Doc. No. 89-4) is **DENIED**.

**IT IS FURTHER ORDERED** that counsel for the parties shall appear before the

undersigned for a final pre-trial conference at **8:30 a.m.** on **Wednesday, October 17, 2001,** at Courtroom #4, Seventh floor, Warren E. Burger Federal Building, 316 North Robert Street, Saint Paul, Minnesota.

**IT IS FURTHER ORDERED** that, in light of the foregoing rulings on the motions in limine and plaintiff's counsel's representation to the Court in its September 26, 2001, transmittal letter that counsel would be meeting and conferring to resolve objections to exhibits prior to trial, counsel for the parties are directed to file (in Saint Paul) and serve updated exhibit lists and revised objections to exhibits by **4:00 p.m.** on **Monday, October 15, 2001.**

Dated: October 9, 2001

RICHARD H. KYLE
United States District Judge